IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARCOS A. CERVANTES,<br><br>Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:05-CR-204 TC |

Defendant Marcos A. Cervantes has been indicted on one count of Possession of Methamphetamine With Intent To Distribute and Aiding and Abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Mr. Cervantes filed a Motion to Suppress evidence obtained by the government during a February 13, 2005 traffic stop and warrantless search of a car in which Mr. Cervantes was a passenger.  Specifically, he contends that his Fourth Amendment rights were violated because the officer did not have reasonable articulable suspicion to stop the car or detain Mr. Cervantes and did not have probable cause to search the car.

The court finds that both the stop and the continued detention of Mr. Cervantes were proper.  But because Mr. Cervantes does not have standing to challenge the search of the car, the court need not reach the question of whether the search was legal.  For these reasons, Mr. Cervantes' Motion to Suppress is DENIED.

**FINDINGS OF FACT**[1]

On the evening of February 13, 2005, in Orem, Utah, Utah County Sheriff's Deputy Daniel Forster was on patrol in his police car along with his police dog Kaya, who is trained to detect methamphetamine, marijuana, cocaine and heroin.  Around 9:40 p.m., Deputy Forster received a call from Detective Lane Critser of the Utah County Major Crimes Task Force. Detective Critser asked Deputy Forster to stop a black Toyota Camry that was driving northbound on Interstate 15 in the Orem area, but only if Deputy Forster could establish probable cause to pull the car over.  Detective Critser described the car and its likely location on I-15,  and gave Deputy Forster the car's license plate number.

When Detective Critser called Deputy Forster, Detective Critser was conducting a narcotics investigation.  He did not tell Deputy Forster why he wanted the car stopped.  He did not say he had suspicions of illegal narcotics or other criminal activity.   Instead, he asked Deputy Forster to conduct what is referred to as a "walled-off" stop of the car.  According to Detective Critser, a "walled-off" stop is a common law enforcement technique used by investigators who have information regarding criminal activity but who do not want to "tip their hand" to the suspect currently being investigated.  (Tr. at 55.)  "We will use patrol vehicles to initiate stops for offenses other than what we are doing our investigation on.  And then, of course, we are expecting or hoping that there would be something more coming out of that traffic stop, such as the seizure of narcotics or weapons, etcetera.  Basically what we're doing is we're trying to build

---

[1]Unless otherwise noted, the facts are taken from the testimony and exhibits presented during the August 22, 2005 evidentiary hearing on Mr. Cervantes' Motion to Suppress.  (See Transcript of Aug. 22, 2005 Evidentiary Hearing on Motion to Suppress ("Tr.").)

a wall between what's happening with our investigation and the suspect at the time." (Tr. at 55-56.)  Deputy Forster was aware that the stop was to be a walled-off stop, but he was told nothing regarding the nature of the investigation or the individuals in the car.

Soon after Detective Critser's request for a walled-off stop, Deputy Forster, driving north on I-15, spotted the car described to him by Detective Critser.  The car was traveling in the inside lane (far left lane) of the interstate.  He followed the car for about two miles, and he noted that the car was driving between seventy-five to eighty miles per hour in a sixty-five mile-per-hour speed zone (he "paced" the car with his own).  He also watched the car weave multiple times across the white lines into adjacent northbound lanes of traffic and make a lane change without signaling.  These actions of the driver were in violation of Utah law.  At that time, based on his observations, Deputy Forster decided to pull the car over.  He turned on his patrol car's overhead lights and the car slowed down abruptly, moving partly into the median and nearly coming to a complete stop.  Deputy Forster motioned to the driver to pull over to the right side of the interstate.  The car then traveled across the three lanes of northbound traffic and came to a stop on the right shoulder of the road.  Deputy Forster reported the traffic stop to the Utah County Sheriff's dispatch center, giving the location of the stop and the car's license plate number.

After Deputy Forster and the driver of the car pulled over to the side of the road, Deputy Forster got out of his patrol car and walked to the driver's side window of the car.  Three adults and one child were in the car.  One of the adults was the Defendant, Marcos Cervantes, who was sitting in the back seat of the car on the passenger side.  The driver rolled down his window, at least partially.  Deputy Forster immediately smelled the odor of burnt marijuana coming out of the car.  He also noticed that the driver was moving very slowly and appeared to be lethargic.

3

Based on the driver's lethargic demeanor, erratic driving, and the odor of marijuana, Deputy

Forster believed that the driver was impaired by drugs.

Deputy Forster asked the driver for his driver's license and car registration.  The driver

said he did not have a driver's license.  Also, Deputy Forster learned that the car was registered

to a person who was not present.  He asked each of the adults in the car why and how they had

possession of a car that was not registered in any of their names.  According to Deputy Forster,

each person had a different explanation.  He ran a computer check on the driver's name (Jesus

Garcia-Fernandez), the car's license plate number, and the car's registration information.  At

some point during this time, two detectives from the Utah County Major Crimes Task Force,

Detectives Wolken and Kogianes, arrived.

Deputy Forster then took Kaya, the drug-sniffing dog, out of his patrol car and gave Kaya

the order to sniff the exterior of the car.  Kaya did so and indicated the presence of illegal drugs

by barking, biting, or scratching at the car's front doors.  Deputy Forster then asked the driver

and passengers to get out of the car, one at a time.  He patted down each of the adults, checking

for weapons.  As he patted down Mr. Cervantes, he noticed a strong odor of marijuana and said

to Mr. Cervantes that Mr. Cervantes smelled like marijuana.  According to Deputy Forster, Mr.

Cervantes admitted that he had smoked marijuana earlier.

Deputy Forster then searched the inside of the car, using Kaya to indicate the location of

illegal drugs.  During the search, the officers discovered a package of methamphetamine hidden

in the car.

Deputy Forster arrested the driver, Mr. Garcia-Fernandez, for driving under the influence

(DUI) of drugs and cited him for improper lane change and speeding.  Mr. Garcia-Fernandez

later pleaded guilty to the DUI charge.  (See Tr. at 45; Docket from State of Utah v. Jesus Garcia-Fernandez (Case No. 051400720, 4th Judicial District for the State of Utah), attached as Ex. to Def.'s Supplemental Mem. Supp. Mot. to Suppress.)

Mr. Cervantes was arrested as well and subsequently indicted in federal district court.

## CONCLUSIONS OF LAW

Mr. Cervantes seeks suppression of "all evidence obtained by and or through the illegal stop and subsequent unlawful detention and search" of the black Toyota Camry on February 13, 2005.  (Def.'s Mot. to Suppress.)  The court finds that both the stop and the continued detention of Mr. Cervantes were proper.  But because Mr. Cervantes does not have standing to challenge the search of the car, the court need not reach the remaining question of whether the search was legal.  For these reasons, the court DENIES his Motion to Suppress.[2]

**The traffic stop was legal.**

In the Tenth Circuit, because a traffic stop is analogous to an investigatory detention, it is analyzed under the principles of Terry v. Ohio, 392 U.S. 1 (1968).  United States v. Holt, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc).  Accordingly, the court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  Terry, 392 U.S. at 20.

---

[2]Mr. Cervantes also asserts that the evidence should be suppressed because the government has not shown a sufficient nexus between Mr. Cervantes and the methamphetamine necessary to establish constructive possession.  This issue is one for the jury at trial and is not relevant to a Fourth Amendment motion to suppress.  Accordingly, the court does not reach the question.

**Was the traffic stop justified at its inception?**

In the Tenth Circuit, "a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). In this case, Deputy Forster testified that he observed numerous traffic violations, any of which would justify the initial stop. For example, he said the driver was speeding. He also watched the car weave multiple times across the white lines into adjacent northbound lanes of traffic and make a lane change without signaling. The observed actions of the driver were in violation of Utah law. Accordingly, the stop was justified because it was based on observed traffic violations.

Mr. Cervantes, however, contends that the reasons recited by Deputy Forster were simply pretext for some other invalid reason and so the stop was illegal. The Tenth Circuit defined "pretextual stop" in the now-overruled case of United States v. Guzman, 864 F.2d 1512 (10th Cir. 1988), as a traffic stop in which "the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." 864 F.2d at 1515. But the Tenth Circuit has since made it clear in United States v. Botero-Ospina, 71 F.3d 783 (10th Cir. 1995), that the Guzman standard was "unworkable," and it overruled Guzman in 1995. 71 F.3d at 787. "It is irrelevant . . . that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." Id. (internal citation omitted). The Tenth Circuit made clear

that

> we do not abandon the traveling public to the "arbitrary exercise of discretionary
> police power." Our holding in this case properly focuses on the very narrow
> question of whether the initial stop of the vehicle is objectively justified. We
> leave intact the vast body of law which addresses the second prong of the <u>Terry</u>
> analysis – whether the police officer's actions are reasonably related in scope to
> the circumstances that justified the interference in the first place. . . . [I]f an
> officer's initial traffic stop, though objectively justified by the officer's
> observation of a minor traffic violation, is motivated by a desire to engage in an
> investigation of more serious criminal activity, his investigation nevertheless will
> be circumscribed by <u>Terry</u>'s scope requirement.

<u>Id.</u> at 788 (internal citations omitted). Mr. Cervantes' pretext argument is not a valid reason to

suppress evidence based on Deputy Forster's initial stop of the car, which, as noted above, the

court finds was justified at its inception.

Mr. Cervantes also raises issues regarding Deputy Forster's credibility. In his

Supplemental Memorandum in Support of the Motion to Suppress, he contends that Deputy

Forster did not actually observe any traffic violation and that the officer "stopped this vehicle for

one reason. He was told to stop it." (Def.'s Supplemental Mem. Supp. Mot. Suppress at 1, 3.)

Deputy Forster's testimony that he observed various traffic violations is not refuted by any

evidence presented to the court. The court is not persuaded that the purported inconsistencies in

Deputy Forster's testimony (<u>e.g.</u>, his alleged intentional failure to videotape the stop, his failure

to mention the Task Force's narcotics investigation in his police report, and his failure to call for

back-up when he stopped the car) are evidence that he did not observe the traffic violations.

Indeed, other evidence corroborates Deputy Forster's testimony. For example, it is undisputed

that the driver of the car – Mr. Jesus Garcia-Fernandez – pleaded guilty to the criminal offense of

driving under the influence of a controlled substance. This supports Deputy Forster's description

7

of Mr. Garcia-Fernandez's driving pattern on I-15 before the stop occurred and Deputy Forster's description of Mr. Garcia-Fernandez as impaired by drugs.

Mr. Cervantes' credibility attack fails in light of the unrefuted and corroborated testimony of Deputy Forster.  The court finds that Deputy Forster observed traffic violations that justified his initial stop of the car.[3]

But this does not end the inquiry.  The government must also show that the continued detention of Mr. Cervantes was reasonable given the totality of the circumstances.  See Terry, 392 U.S. at 20.

**The continued detention of Mr. Cervantes was legal.**

Generally, during a traffic stop, an officer may detain persons only for as long as it takes to request a driver's license and car registration, run required computer checks, and issue a citation.  See, e.g., United States v. Martinez, 983 F.2d 968, 974 (10th Cir. 1992).  But to detain the individual longer, the officer "must have 'an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring" in order to justify detaining an individual for a period of time longer than that necessary to review a driver's license and vehicle registration, run a computer check, determine that the driver is authorized to operate the vehicle, and issue the detainee a citation.'" United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998) (internal citation omitted).  Law enforcement officers may take such reasonable investigative steps as necessary to confirm or dispel their suspicions, and the individuals may be detained while these

---

[3]To the extent the United States is making an alternative argument that the knowledge of Detective Critser about criminal activity should be imputed to Deputy Forster to establish reasonable suspicion (see Tr. at 52), the court declines to reach that issue.

steps are being taken.  United States v. Martinez, 983 F.2d 968, 974 (10th Cir. 1992).

The standard for evaluating whether an officer has a reasonable suspicion of illegal

activity is an objective one.  See, e.g., United States v. Villa-Chaparro, 115 F.3d 797, 802 (10th

Cir. 1997).  The determination is to be made on the totality of the circumstances.  Salzano, 158

F.3d at 1111.

Here, Deputy Forster immediately smelled the odor of burnt marijuana when he walked

to the driver's side of the car where the window had been rolled down.  The driver of the car

appeared to Deputy Forster to be under the influence of drugs or alcohol.  The driver did not

produce a valid driver's license.  Neither the driver nor the adult passengers owned the car (the

registered owner was not present).  When he asked each of the adults in the car why and how

they had possession of a car that was not registered in any of their names, each person had a

different explanation.  None of the individuals in the car had the right to drive off in a car that

was not registered to them.

Deputy Forster decided to investigate his suspicions of illegal drug activity.  He released

his trained police dog to sniff the exterior of the car.  The dog indicated twice on the exterior of

the car that illegal drugs were present.  He then ordered all of the persons in the car to get out of

the car.  Such a minimal intrusion is valid under the Fourth Amendment.  See Maryland v.

Wilson, 519 U.S. 408, 415 (1997) ("[A]n officer making a traffic stop may order passengers to

get out of the car pending completion of the stop.").

**Mr. Cervantes does not have standing to challenge the search of the car.**

Mr. Cervantes asserts a challenge to the officers' search of the interior of the car,

claiming that his Fourth Amendment rights were violated by the search.  But in order to

challenge the search of the car's interior, he must first establish that he had a subjective

expectation of privacy in the car and that society is prepared to recognize that expectation as

objectively reasonable (that is, he must establish that he has standing). United States v. Allen,

235 F.3d 482, 489 (10th Cir. 2000). According to the Tenth Circuit, "in order for a defendant to

show such an expectation of privacy in an automobile, the defendant bears the burden at the

suppression hearing to show a 'legitimate possessory interest in or [a] lawful control over the

car.'" Id. (quoting United States v. Gama-Bastidas, 142 F.3d 1233, 1239 (10th Cir. 1998)). Mr.

Cervantes has not satisfied his burden.

Mr. Cervantes was a passenger in the back seat of the car when Deputy Forster stopped

the car. There is no evidence that he was driving the car, that he had keys to the car, that the car

was registered to him, that he had been given possession by the rightful owner, or that he had

control over or possession of the car at the time of the search.

The United States Supreme Court has held that a passenger who asserts neither a

possessory nor property interest in a car "would not normally have a legitimate expectation of

privacy in the vehicle protected by the Fourth Amendment." Rakas v. Illinois, 439 U.S. 128,

148-49 (1978). As such, the Tenth Circuit has stated that "Rakas provides the definitive teaching

that a 'passenger *qua* passenger' has no reasonable expectation of privacy in a car that would

permit the passenger's Fourth Amendment challenge to the search of the car." United States v.

Lewis, 24 F.3d 79, 81 (10th Cir. 1994).

Mr. Cervantes has not established any expectation of privacy with respect to the car. As

such, he does not have standing to challenge the search of the car. Accordingly, the court does

not reach the issue of whether the search of the car was constitutional.

**ORDER**

For the foregoing reasons, Defendant Marcos Cervantes' Motion to Suppress is DENIED.

DATED this 9th day of December, 2005.

BY THE COURT:

TENA CAMPBELL
United States District Judge